IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **IVY GALE,** | * |
| | * |
| **Plaintiff,** | * |
| | *   **Civil No. TMD 15-2253** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| **Defendant.** | * |
| | *********** |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ivy Gale seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 13).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1965, has a high-school education, and previously worked as an account clerk and retail store manager.  R. at 20, 197-98.  Plaintiff filed an application for DIB on June 28, 2011, and protectively filed an application for SSI on March 7, 2012, alleging disability beginning on May 18, 2011, due to multiple sclerosis; numbness in the legs, feet, arms, hands, and fingers; high blood pressure; and neck and body pain.  R. at 13, 162-72, 192, 196.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 45-88, 96-112.  On September 13, 2013, ALJ F.H. Ayer held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 23-44.  At the hearing, Plaintiff amended her alleged onset date of disability to January 1, 2012.  R. at 26-27.  On September 26, 2013, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of January 1, 2012, through the date of the decision.  R. at 10-21.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 1, 2015.  R. at 1-3, 6-9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 31, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     State Agency Medical Consultants**

On September 29, 2011, a state agency medical consultant, H. Stevens, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 49-50.  Dr. Stevens opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 49.  Plaintiff had no postural, visual, communicative, or environmental limitations, but her handling and fingering with the right upper extremity were limited.  R. at 49-50.  Her feeling in both extremities was limited.  R. at 50.

On July 12, 2012, another state agency consultant, John Sadler, M.D., again assessed Plaintiff's physical RFC.  R. at 61-63, 74-76.  Dr. Sadler opined that, because of her history of multiple sclerosis, hypertension, and carpal tunnel syndrome, Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 61, 74.  Plaintiff could never crawl, but she frequently could balance and occasionally could stoop, kneel, crouch, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 62, 75.  She had no visual or communicative limitations, but her handling, fingering, and feeling were limited in her right upper extremity, and she was to avoid concentrated exposure to extreme cold and heat, vibration, and hazards.  R. at 62-63, 75-76.

**B.      Hearing Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III (plus a limitation to "occasionally handle, finger, and feel with the dominant right upper extremity") could not perform Plaintiff's past relevant work but could perform the unskilled, sedentary[2] jobs of security worker, finish machine tender, or quality-control worker. R. at 27-30. A person's functioning at 80% or less compared to other individuals performing similar tasks would not be employable. R. at 31. A person absent from work two days per month would not be employable. R. at 31. With the exception of his testimony regarding productivity, absenteeism, and a sit-stand option, the VE's testimony was consistent with the *Dictionary of Occupational Titles*[3] (the "DOT"). R. at 29-31.

Plaintiff then testified that daily pain prevented her from working. R. at 34. She would have three or four "bad days" in a week during which she would experience numbness in her fingers affecting her ability to grasp objects. R. at 34-35. Her numbness in her hands affected her ability to cook. R. at 36. The numbness in her feet affected her ability to walk, and she could stand for twenty minutes. R. at 36-37. Her pain interfered with her ability to fall asleep quickly. R. at 37-38. She had worn braces for two years. R. at 38.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

Plaintiff further testified that she had difficulty with concentrating and focusing. R. at 39. When she is stressed and must leave her home, her pain is "a seven or eight." R. at 40. According to Plaintiff, she stopped working because her multiple sclerosis worsened, and she could not return to work because a stressful environment would exacerbate her condition. R. at 40-42.

### III

### Summary of ALJ's Decision

On September 26, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of January 1, 2012; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a security worker, finish machine tender, or quality-control worker. R. at 15-21. The ALJ thus found that she was not disabled from January 1, 2012, through the date of the decision. R. at 21.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: [Plaintiff] can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk 2 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; frequently balance; occasionally climb ramps and stairs, stoop, kneel, and crouch; never climb ladders, ropes, or scaffolds, or crawl; she must avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards; and she requires the ability to alternate between sitting and standing about every 30 minutes.

R. at 17. The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 17-18. The ALJ found:

> In August 2011, [Plaintiff] was assessed with bilateral carpal tunnel syndrome. She has been advised exercises, Gabapentine, and braces. Records are not noteworthy for side effects reported on Gabapentine. The dosage [Plaintiff] identified at the hearing is not a high daily dosage. Records are not noteworthy for surgery recommended for carpal tunnel syndrome or any indication that her diagnostic findings reveal severe findings. Records are not even noteworthy for injections for carpal tunnel syndrome or necessary physical therapy. As noted above, records are not noteworthy for muscle atrophy. In fact, [Plaintiff's] more recent records note she has 5/5 strength in her extremities, a stable finding [R. at 325-29, 400-09, 411-21, 471-513]. Based on these records, [Plaintiff] is not found fully credible that she is always numb and dropping things.

R. at 18-19.

The ALJ further afforded "great and more weight to the opinions of the State agency medical consultants. They were able to see much of the medical records, with new records noting continued improvements, stability, and similar if not better objective findings." R. at 19.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

6

any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

---

in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that substantial evidence does not support the ALJ's RFC assessment because the ALJ determined that her bilateral carpal tunnel syndrome was a severe impairment, but the ALJ failed to include any limitation related to this impairment in the RFC assessment. *Id.* at 6-7. Plaintiff also asserts that the ALJ's hypothetical questions to the VE did not account

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

for her carpal tunnel syndrome in both upper extremities. *Id.* at 7-8. Plaintiff further contends that the ALJ did not consider her impairments of multiple sclerosis and carpal tunnel syndrome in combination in assessing her limitations on the use of her upper extremities. *Id.* at 8. Plaintiff also argues that the VE's testimony conflicts with the DOT. *Id.* For the reasons discussed below, Plaintiff's assertions are unavailing.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

11

not address. *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Here, the ALJ found at step two that Plaintiff's impairment of bilateral carpal tunnel syndrome was severe because it limited her ability to do basic work activities. R. at 16. The ALJ's hypothetical questions to the VE included a limitation to "occasionally handle, finger, and feel with the dominant right upper extremity" (R. at 28), but the ALJ did not include such a limitation in the RFC assessment (R. at 17). Plaintiff contends that remand is warranted because (1) the ALJ's hypothetical questions to the VE did not account for any limitations related to her left upper extremity and because (2) the ALJ did not include in the RFC assessment any limitation whatsoever related to Plaintiff's bilateral carpal tunnel syndrome. Pl.'s Mem. Supp. Mot. Summ. J. 6-8, ECF No. 12-1.

As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "Step two of the sequential evaluation is a threshold question with a de minimis severity requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam). In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98). Thus, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more

precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013).

In any event, although the ALJ noted Plaintiff's history of suffering from multiple sclerosis and bilateral carpal tunnel syndrome, the ALJ found that the medical evidence did not support the severity of her allegations. R. at 18-19. Plaintiff has not contested the ALJ's consideration of her credibility and weight given to the various opinions in assessing her RFC (R. at 17-20), including the "great weight" given to the state agency medical consultants' opinions that her handling and fingering were limited in only her right upper extremity. R. at 19, 50, 62, 75. Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," her argument in this regard thus is unavailing. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Plaintiff nonetheless contends that, although the ALJ included in the hypothetical questions to the VE a limitation to "occasionally handle, finger, and feel with the dominant right upper extremity" (R. at 28), the ALJ failed to include such a limitation in the RFC assessment. The burden is on the party attacking an agency's determination to show that prejudice resulted from the error, however. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009). "Where harmfulness of the error is not apparent from the circumstances, the party

seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)). Here, the VE testified that, in light of this manipulative limitation, among others, to occasional handling, fingering, and feeling with the right upper extremity, a person with Plaintiff's age, education, and work experience could work as a security worker, finish machine tender, or quality-control worker. R. at 28-31.

Plaintiff, however, maintains that this limitation included in the ALJ's hypothetical questions to the VE regarding her dominant right upper extremity did not account for her bilateral carpal tunnel syndrome and her ability to use her non-dominant left upper extremity. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 12-1. She contends that the VE's testimony conflicts with the DOT because the job of finish machine tender (DOT 739.685-054) requires frequent handling and fingering, while the job of quality-control worker (DOT 737.687-026) requires constant handling and frequent fingering. *See* DOT 739.685-054, 1991 WL 680173 (listed as "umbrella tipper, machine"); DOT 737.687-026, 1991 WL 680047 (listed as "check weigher"). Feeling, fingering, and handling are not present in the job of security worker (DOT 379.367-010), however. *See* DOT 379.367-010, 1991 WL 673244 (listed as "surveillance-system monitor"). The failure of the ALJ to resolve any conflict between the VE's testimony and the DOT regarding the availability of jobs or to consider Plaintiff's limitation in using her non-dominant left upper extremity thus was harmless. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number.").

Plaintiff also maintains that the ALJ "did not consider the combination of [her] carpal tunnel syndrome and her multiple sclerosis in assessing [her] limitations on the use of her upper extremities." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 12-1.  Because the ALJ did consider Plaintiff's impairments in combination (R. at 16-17), however, her contention is without merit, as well.  *See Reid*, 769 F.3d at 866.  "The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." *Id.* at 865 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: July 6, 2016                                                            /s/
                                                                              Thomas M. DiGirolamo
                                                                              United States Magistrate Judge